OPINION
{¶ 1} Mark D. Sells appeals from his conviction and sentence in Miami County Common Pleas Court on one count of aggravated murder and one count of aggravated robbery.
 {¶ 2} Sells advances two assignments of error on appeal. First, he contends the trial court erred in overruling a motion to suppress physical evidence obtained pursuant to a search warrant. Second, he claims the trial court erred in imposing maximum and consecutive sentences in violation of Blakely v.Washington (2004), 542 U.S. 296, and United States v. Booker
(2005), 543 U.S. 220.
 {¶ 3} The present appeal stems from the murder of Sharid Gantz inside his Tipp City home. While investigating the crime, detective Steve Lord interviewed a juvenile named Bobby Barrett. Based on information obtained from Barrett, who implicated himself in the crime along with Sells and another person, Lord sought a warrant to search Sells' residence at 411 South Second Street and any automobile parked in the garage. Lord presented a search warrant affidavit to Miami County Municipal Court Judge Michael Hemm, who then took sworn testimony from Lord. After reviewing the affidavit and Lord's testimony, Judge Hemm issued a search warrant.
 {¶ 4} After being charged with the crimes set forth above, Sells moved to suppress evidence obtained pursuant to the search warrant. Following a hearing, the trial court overruled Sells' motion. In its ruling, the trial court found that Lord's affidavit had omitted some information bearing negatively on Barrett's credibility. The trial court also found that Lord inaccurately had stated that Barrett knew certain facts that only a witness to the crimes would know. Despite these shortcomings, the trial court found Barrett's information to be credible. The trial court also concluded that any omissions in Lord's affidavit were the result of negligence rather than an intent to mislead or recklessness. In addition, the trial court held that probable cause still would have existed even if Lord had provided the issuing judge with all available information. Finally, in response to a motion for reconsideration, the trial court rejected an argument that Lord's affidavit was fatally defective because it failed to link Sells to the residence to be searched.
 {¶ 5} In his first assignment of error, Sells contends the trial court erred in overruling his motion to suppress physical evidence obtained pursuant to the search warrant. He advances three arguments in support. First, he claims the affidavit lacked any indicia of probable cause to believe evidence of a crime would be found at the place to be searched. Second, he argues that the affidavit lacked any indication that evidence of a crime was presently at the location to be searched. Third, he asserts that the affidavit was defective because Lord failed to provide the issuing judge with all necessary information to make an accurate probable cause determination.
 {¶ 6} Upon review, we find the foregoing arguments to be unpersuasive. Sells' first argument challenges Lord's affidavit on the basis that it failed to identify 411 South Second Street as his residence and failed to identify any evidence that reasonably might be found there. Although the affidavit failed to state explicitly that Sells resided at 411 South Second Street, we have characterized such a shortcoming as "nothing more than a minor, technical failure [which] does not render the affidavit or warrant fatally defective." State v. Emerick (June 6, 1997), Montgomery App. No. 15768 (finding it reasonable to infer that the defendant resided at the address identified in a search warrant affidavit even though the affidavit did not explicitly say so). Moreover, the affidavit specifically identified evidence believed to be found at 411 South Second Street. This evidence included, among other things, "hair, blood, human tissue, any object capable of inflicting death or serious physical harm, shoes, clothing, criminal tools, United States currency, [and] glass fragments[.]" Based on information provided by Barrett, including assertions that Sells repeatedly had struck Gantz in the head with a baseball bat and had broken out Gantz's car window, it is reasonable to infer that the foregoing evidence might be found inside Sells' home or car. Therefore, the issuing judge had a substantial basis for concluding that probable cause existed. See State v. George (1989), 45 Ohio St.3d 325, at paragraph two of the syllabus.
 {¶ 7} Sells next contends the affidavit lacked any indicia that evidence presently would be found at 411 South Second Street. This argument raises an issue of "staleness." In support, Sells asserts that Lord did not seek the search warrant until eighteen days after Gantz's death. Given this passage of time, he claims there was no reasonable basis to believe any evidence still would be found in his home or car.
 {¶ 8} "It is a fundamental principle of law that the information in an affidavit for a search warrant must present timely information. The evidence must consist of facts so `closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time.' While there is no arbitrary time limit as to how old information can be, the facts must establish that the subject activity [or evidence] is probably occurring at the place to be searched at the time of the search." State v. Kail (June 19, 1998), Montgomery App. No. 96-CR-3796 (citations omitted). "Furthermore, the question of the `staleness' of probable cause depends upon the nature of the activity in question and requires a case-by-case review. Probable cause cannot be reduced to simply counting the number of days between the occurrence of the facts relied upon and the issuance of the warrant. However, if the affidavit suggests isolated events of possible illegal activity, the likelihood that there remains probable cause typically diminishes with the passage of time." Id. (citations omitted).
 {¶ 9} In the present case, police were investigating a violent beating death. The crime scene contained blood spatter, skull fragments, and brain tissue. Based on his interview of Barrett, Lord believed Sells may have wielded the baseball bat. The items sought in the search warrant affidavit included hair, blood, human tissue, objects capable of inflicting death or serious physical harm, shoes, and clothing. These items are relatively durable in nature, and Lord reasonably believed that they still might be found in Sells' home or car. In our view, the issuing judge had a substantial basis for finding probable cause despite the passage of time.
 {¶ 10} Sells' third argument is that the affidavit was defective because Lord failed to provide the issuing judge with all necessary information to make an accurate probable cause determination. In particular, Sells asserts that Lord omitted several facts concerning the credibility of Barrett, the source of his information. Sells also contends Lord incorrectly told the issuing judge that Barrett knew things only someone who had witnessed the crime could know. In light of these omissions and misrepresentations, Sells argues that Lord's affidavit was tainted and the warrant was invalid.
 {¶ 11} "To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either `intentionally, or with reckless disregard for the truth.' `Reckless disregard' means that the affiant had serious doubts of an allegation's truth. Omissions count as false statements if `designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate." Statev. Waddy (1992), 63 Ohio St.3d 424, 441 (citations omitted). "Even if the affidavit contains false statements [or omissions] made intentionally or recklessly, a warrant based on the affidavit is still valid unless, `with the affidavit's false material set to one side [or with the omissions included], the affidavit's remaining content is insufficient to establish probable cause[.]" Id. (citations omitted).
 {¶ 12} On appeal, Sells identifies three alleged omissions concerning Barrett's credibility. The first is that Barrett had given police inconsistent versions of events about the crime. The second is that Barrett's statements conflicted with those of Chris Cassidy, another participant. The third is that Barrett had been promised a favorable recommendation to the prosecutor in exchange for his cooperation.
 {¶ 13} The first alleged omission is of little consequence. The only apparent inconsistency is Barrett's initial denial of his own involvement in the crime. Barrett then confessed to his role and provided consistent statements about Sells' participation in the offense. The second alleged omission cannot be held against Lord because he had not spoken to Cassidy when he applied for the search warrant. Sells cites nothing to indicate that Lord was aware of any inconsistency in the statements provided by Barrett and Cassidy. "[A]n affiant cannot be faulted for failing to include in an affidavit facts that are unknown to him at the time." State v. Stropkaj, Montgomery App. No. 18712, 2001-Ohio-1837.
 {¶ 14} The third alleged omission is more significant. InStropkaj, we held that omitted facts bearing adversely on the credibility of an informant have a tendency to mislead a judge considering a search warrant request. We also recognized that such facts include favorable treatment a witness receives in exchange for cooperating with police. When such information is omitted from an affidavit, the relevant inquiry is whether the omission was intentional, reckless, or negligent. If it was intentional or reckless, the next question is whether the affidavit would establish probable cause even if the omitted facts were included. Id.; see also Waddy, supra, at 441.
 {¶ 15} Here Barrett was told that Lord would give the prosecutor "a recommendation based on his cooperation." This information was not included in the search warrant affidavit. Following a hearing on the matter, however, the trial court concluded that any omissions were merely the result of negligence rather than an intent to mislead or recklessness. The trial court also concluded, based on the other information in the affidavit and Lord's sworn testimony before the issuing judge, that probable cause existed even taking into account the omission. Having reviewed the affidavit and Lord's contemporaneous sworn testimony before the issuing judge, we agree with this conclusion.
 {¶ 16} Sells' final argument concerns Lord's claim that Barrett knew things only someone who had witnessed the crime could know. Sells points out that this is not entirely true. Two of the facts allegedly known only to Barrett were that the crime was committed with a baseball bat and that a rock was thrown through the victim's car window. Sells notes, however, that the baseball bat had been shown on television after the crime and that the broken car window was visible to anyone who walked past the victim's house. Sells also stresses that at least one other person, Chris Cassidy, who also was involved in the crime, would have known the injuries suffered by the victim and the location of the victim's body.
 {¶ 17} Upon review, we are unpersuaded that the foregoing facts rendered Lord's affidavit materially misleading. As for the baseball bat, Lord admitted to the issuing judge at the time of the warrant application that it had been shown on television. Moreover, while the broken car window would have been visible to anyone passing by, the record does not reflect that such an individual would have known a rock was used to break it. Perhaps more importantly, the trial court recognized that Sells provided Lord with other detailed information that proved accurate. This information included the existence of blood spatter, the nature of the victim's wounds, and the presence of cigarette butts behind the victim's house. In short, we agree with the trial court's assessment that Barrett possessed a degree of knowledge about the crime sufficient to support a finding that his information was credible. Accordingly, the issuing judge had a substantial basis for concluding that probable cause existed. Sells' first assignment of error is overruled.
 {¶ 18} In his second assignment of error, Sells claims the trial court erred in imposing maximum and consecutive sentences in violation of Blakely v. Washington (2004), 542 U.S. 296, andUnited States v. Booker (2005), 543 U.S. 220. Sells argues that a jury, rather than a judge, is required to make the findings necessary for the imposition of maximum and consecutive sentences.
 {¶ 19} Upon review, we find Sells' argument to be persuasive. The Ohio Supreme Court recently declared parts of Ohio's felony sentencing scheme unconstitutional. State v. Foster, ___ Ohio St.3d ___, 2006-Ohio-856. The unconstitutional provisions include R.C. § 2929.14(C), which relates to the imposition of maximum sentences, and R.C. § 2929.14(E)(4), which relates to the imposition of consecutive sentences. In Foster, the court held that these provisions violate the principles set forth inBlakely and that the use of such sentencing criteria is unconstitutional because it "require[s] judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant." Id. at ¶ 65-67, ¶ 83. The Foster court severed the provisions it found to be unconstitutional, including R.C. §2929.14(C) and R.C. § 2929.14(E)(4). Id. at ¶ 97, ¶ 99. In light of this holding, trial courts now have full discretion to impose a prison sentence within the statutory range without making findings or giving reasons for imposing maximum or consecutive sentences.
 {¶ 20} Because Foster held the statutes under which Sells' sentence was imposed to be unconstitutional and severed them from the sentencing provisions of the Revised Code, we must remand this cause for a new sentencing hearing. Id. at ¶ 1041-05. At the new sentencing hearing, the trial court "shall consider those portions of the sentencing code that are unaffected by [Foster] and impose any sentence within the appropriate felony range." Id. at ¶ 105. Sells' second assignment of error is sustained.
 {¶ 21} Based on the reasoning set forth above, we hereby affirm in part and reverse in part the judgment of the Miami County Common Pleas Court and remand the cause for further proceedings consistent with this opinion.
Fain, J., concurs.